# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 7, 2004 Session

## SHARON TAYLOR  v.  DOUGLAS BUTLER and CITY AUTO SALES

**Appeal by permission from the Court of Appeals, Western Section**
**Chancery Court for Shelby County**
**No. CH-02-0287-3     Hon. D. J. Alissandratos, Judge**

———————————

**No. W2002-01275-SC-R11-CV - Filed August 31, 2004**

———————————

We granted permission to appeal in this case to determine whether a claim for fraudulent inducement to a contract must be submitted to arbitration when the contract's arbitration clause covers "all claims, demands, disputes or controversies" and states that it is governed by the Federal Arbitration Act ("FAA").  We hold that parties may agree to arbitrate claims of fraudulent inducement despite prohibition of arbitration of such claims under Tennessee law, and because the parties in this case specifically agreed that the FAA governs the arbitration clause, they agreed to arbitrate the claim for fraudulent inducement of the contract.  However, we also find that the arbitration clause in this case is unconscionable and therefore void because it reserves the right to a judicial forum for the defendants while requiring the plaintiff to submit all claims to arbitration.  For these reasons, the trial court's dismissal of the complaint is overruled, and the decision of the Court of Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals is Affirmed.**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and ADOLPHO A. BIRCH, Jr., JJ. joined.  JANICE M. HOLDER, J., filed a concurring and dissenting opinion.

Joseph D. Barton, Millington, Tennessee, for the appellant, City Auto Sales.

Sam F. Cole, Jr., Memphis, Tennessee, for the appellee, Sharon Taylor.

-1-

**OPINION**

**FACTUAL BACKGROUND**

On June 4, 1998, Sharon Taylor ("Taylor") purchased a car from City Auto Sales ("City Auto").[1] The parties signed a contract entitled "As Is Used Vehicle Retail Buyers Order" ("Buyers Order"). The Buyers Order provided that the total cost of the vehicle was $10,058.00. Taylor was to make a cash down payment to City Auto in the amount of $1,310.00 and finance the remainder. The Buyers Order contained an arbitration provision which stated that "all claims, demands, disputes or controversies of every kind or nature between [the parties] arising from the [sale of the vehicle] shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 12 et seq."

Taylor sold her car for $1,000.00 and used the proceeds therefrom as part of her down payment; she then signed a short-term promissory note agreeing to pay the remainder of the down payment over the following three months. City Auto delivered the vehicle to Taylor on the day the Buyers Order was signed. Taylor claims that City Auto told her at the time of delivery that her long-term financing had been approved. It is undisputed, however, that at the time of delivery, Taylor signed a separate "Spot Delivery Agreement." This agreement stated that City Auto was giving Taylor immediate possession of the car "pending the purchase of the installment sale agreement by a financing institution." The agreement also provided that, if proper financing could not be obtained within three days, City Auto would have the option to "immediately rescind the sale." Additionally, in the event that Taylor did not immediately return the vehicle, City Auto would "have the right to take immediate possession of the vehicle."

Approximately one week after the sale, City Auto notified Taylor that her application for financing had not been approved. When Taylor did not return the vehicle, City Auto repossessed the car along with personal items belonging to Taylor that were inside the vehicle at that time. City Auto retained possession of Taylor's personal belongings along with the $1,000.00 down payment.

Taylor filed suit against City Auto alleging a violation of the Tennessee Consumer Protection Act ("TCPA"), arguing that City Auto improperly obtained her $1,000.00 down payment and her personal property that was in the car by using deceptive tactics in violation of the TCPA. Taylor also alleged that she was told that the Spot Delivery Agreement was "simply a formality and did not change the fact that she had already been approved for financing" on the sale of the car. City Auto responded by filing a motion to dismiss.

---

[1] Taylor also names Douglas Butler as a defendant in her complaint as a representative of City Auto. No separate allegations were made against Butler; he and City Auto were referred to collectively as "defendants." The Court of Appeals treated the defendants collectively. On appeal to this Court, only City Auto filed an application for permission to appeal.

The trial court granted City Auto's motion to dismiss the complaint, holding that Taylor was bound by the arbitration provision in the Buyers Order. The Court of Appeals reversed the trial court, holding that a plaintiff cannot be compelled to arbitrate a claim pursuant to an arbitration provision that was fraudulently induced.

We granted City Auto's application to appeal to determine whether parties can be bound to arbitrate a claim for fraudulent inducement when the arbitration clause specifically states that it is governed by the FAA. On appeal, Taylor also raises the issue of whether the arbitration agreement is unconscionable because it reserves for City Auto the right to pursue judicial remedies while limiting Taylor to arbitration.

## ANALYSIS

### *I. Arbitration of Claim for Fraudulent Inducement*

The FAA applies to "a written provision in any maritime transaction or a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (1994). The purpose of the FAA is "to ensure the enforceability, according to their terms, of private agreements to arbitrate." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995) (quoting Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)). Generally, arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

As the United States Supreme Court has stated,

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

Volt Info. Sci., Inc., 489 U.S. at 479 (citations omitted). Therefore, the question becomes "what the contract has to say about the arbitrability of petitioner's claim." Mastrobuono, 514 U.S. at 58; see also Frizzell Const. Co. v. Gatlinburg, L.L.C., 9 S.W.3d 79, 84 (Tenn. 1999).

In this case, the arbitration clause governs "all claims, demands, disputes or controversies of every kind or nature between [the parties] arising from the [sale of the vehicle]." The arbitration clause also states that arbitration shall be "conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 12 et seq." Furthermore, it contains the provision that the parties "agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the arbitrator."

When a contract is controlled by the FAA and contains a broad arbitration clause, claims of fraudulent inducement are subject to arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). Specifically, the United States Supreme Court held that the language of the FAA "does not permit the federal court to consider claims of fraud in the inducement generally." Id. at 404. Instead, the court may address allegations of fraud only if they are directed to the arbitration clause itself. Id. at 403-04.

In the case under submission, the Court of Appeals found that the claim of fraud in the inducement was not subject to arbitration despite the holding in Prima Paint. The Court of Appeals relied upon City of Blaine v. John Coleman Hayes & Assoc., Inc., 818 S.W.2d 33 (Tenn. Ct. App. 1991) and Frizzell, 9 S.W.3d at 85, as well as two unreported cases.

In City of Blaine, the Court of Appeals rejected the majority opinion in Prima Paint and held that the issue of fraudulent inducement could not be submitted to arbitration under the Tennessee Uniform Arbitration Act. 818 S.W.2d 33, 37-38 (Tenn. Ct. App. 1991). While recognizing that the FAA provides for arbitration of claims of fraud, the Court of Appeals interpreted the Tennessee arbitration statute as requiring judicial determination on the issues of rescission of the contract including fraud in the inducement. Id. Specifically, the Court found that there was no contract to arbitrate if the contract were procured by fraud. Id. at 37.

This Court has also held that claims of fraud in the inducement are to be resolved by the courts and not by an arbitrator when the contract is governed by Tennessee law. Frizzell Constr. Co., 9 S.W.3d at 84. In Frizzell, the arbitration clause purported to govern "[a]ll claims, disputes and or other matters in questions arising out of, or relating to, this Agreement." Id. at 81. In addition to this arbitration clause, the contract contained a clause stating that Tennessee law would form the basis for deciding questions concerning the contract's scope and interpretations. We held that:

> By stating that the contract is to be governed by Tennessee law, the parties have indicated their intention to arbitrate all disputes "arising out of, or relating to" their agreement – but only to the extent allowed by Tennessee law.... Therefore, because Tennessee law contemplates judicial resolution of contract formation issues, we conclude that the parties have indicated their intention not to submit such issues to arbitration.

Id. at 85.

The case under submission differs from City of Blaine and Frizzell in that both City of Blaine and Frizzell specifically provided that the laws of Tennessee would govern the arbitration of the contract. In contrast, the arbitration agreement in this case clearly states that it is to be governed by the FAA and not the Tennessee Uniform Arbitration Act. This distinction is important considering the long history in the federal courts of allowing arbitration of fraudulent inducement claims under the FAA, see Prima Paint, 388 U.S. at 402-05, even though Tennessee law prohibits the arbitration of such claims, see Frizzell, 9 S.W.3d at 84.

-4-

In Frizzell, we stressed that, in deciding whether a claim of fraudulent inducement is subject to arbitration, courts must focus upon the specific terms of the contract at issue. 9 S.W.3d at 84. We held that if the parties agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law, the claim must be submitted to arbitration. Id. The converse is equally true – if the parties did not agree to arbitrate the claim of fraudulent inducement, then they could not be compelled to arbitrate the claim despite the fact that the claim could be arbitrated under the FAA. Id.

It is undisputed that Taylor signed a contract that specifically stated that "all claims, demands, disputes or controversies of every kind or nature between [the parties] arising from the [sale of the vehicle] shall be settled by binding arbitration pursuant to the provisions of the Federal Arbitration Act." (Emphasis added). Therefore, because Taylor knowingly signed the contract, she agreed to arbitrate a claim of fraudulent inducement.

### II. Was the Arbitration Provision Unconscionable?[2]

Taylor also argues that the arbitration agreement is void because it is unconscionable. She maintains that even if the contract was not induced by fraud, the terms of the arbitration provision are unconscionable because the contract reserves for City Auto the right to litigate claims it may have against Taylor while requiring Taylor to submit any of her claims to arbitration.

### A. Who Determines Whether the Arbitration Clause Is Unconscionable?

In Prima Paint, the United States Supreme Court held that while claims of fraud are to be submitted to an arbitrator, claims that specifically attack the formation of the arbitration provision of a contract are to be judicially determined.

> Under [section] 4 [of the FAA], with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitration – the federal court may proceed to adjudicate it.

Prima Paint, 388 U.S. at 403-04 (internal footnote omitted).

---

[2] The dissent contends that the issue of unconscionability was waived because it was not raised until the case was before this Court, and therefore should not be considered. The majority agrees with the dissent to the extent that the pleadings are vague and unclear as to the issues raised by the pleadings. However, this appeal requires us to interpret the provisions of the contract, and the majority is of the opinion that we would not be doing justice in this case were we to consider only the duties and obligations of Ms. Taylor under the contract and not look to the rights and remedies available to the defendant.

Generally, whether a valid agreement to arbitrate exists between the parties is to be determined by the courts, and if a complaint specifically challenges the arbitration clause on grounds such as fraud or unconscionability, the court is permitted to determine it validity before submitting the remainder of the dispute to arbitration. 4 Am. Jur. 2d Alternative Dispute Resolution § 74 (2002 Supp.); see also Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483 (6th Cir. 2001); N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir. 1977); Am. Safety Equip. Corp. v. JP Maguire & Co., 391 F.2d 821 (2nd Cir. 1968); Hart v. McChristian, 42 S.W.3d 552 (Ark. 2001); Simpson v. Cohen, 812 So. 2d 588 (Fla. App. 2002).[3]

In determining whether there is a valid agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern formation of contracts," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). As the United State Supreme Court noted in Allied-Bruce Terminix Cos. v. Dobson:

> Section 2 [of the FAA] gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

513 U.S. 265, 281 (1995). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the enforcement provisions of the FAA. Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

As discussed above, Taylor's claim of fraud in the inducement is subject to arbitration under the FAA because that claim attacks the validity of the contract as a whole. However, her claim that the arbitration provision is unconscionable is a matter to be decided by the courts and not the arbitrator, because it specifically challenges the validity of the agreement to arbitrate irrespective of the validity of the whole contract.

*B. Is the Arbitration Provision in the Contract Unconscionable?*

---

[3] While most courts have held that the question of whether an arbitration provision is valid is to be decided by a court, at least one jurisdiction has found that to be a question for the arbitrator. See, e.g., In Re Conseco Fin. Servicing Corp., 19 S.W.3d 562 (Tex. App. 2000). In In re Conseco, the Texas court held that "whether the terms and conditions of an arbitration agreement are themselves unconscionable is a matter to be submitted to the designated arbitrator." 19 S.W.3d at 569. The Court explained that it was "sympathetic to" the plaintiff's complaints regarding the arbitration clause, but its "hands are tied" by precedent. Id. The Court went on to say that "[i]f we were writing on a blank slate, we would instead follow the Unites States Supreme Court's holding that 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements [by a court] without contravening' the enforcement provisions of the FAA." Id. n.3 (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

In her brief on appeal, Taylor focuses on the following provision contained in the arbitration agreement of the Buyers Order: "Dealer, however may pursue recovery of the vehicle under the Tennessee Uniform Commercial Code and Collection of Debt due by state court action." Taylor asserts that this provision renders the contract unconscionable because City Auto has retained for itself legal remedies beyond arbitration while restricting Taylor to those remedies available under the Federal Arbitration Act.

The question of whether a contract or provision thereof is unconscionable is a question of law. See Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co., 709 F.2d 427, 435 n.12 (6th Cir. 1983).

If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term. See Restatement (Second) of Contracts § 208 (1981). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes . . . ." Restatement (Second) of Contract § 208, cmt. a (1981).

Enforcement of a contract is generally refused on grounds of unconscionability where the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Haun v. King, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984) (quoting In re Friedman, 407 N.Y.S.2d 999 (1978)); see also Aquascene, Inc. v. Noritsu Am. Corp., 831 F.Supp. 602 (M.D. Tenn. 1993). An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice. Id.

While Tennessee has yet to address the issue of whether an arbitration provision in a consumer contract which reserves a right to access to the courts only for the merchant and not the consumer is voidable on the basis of unconscionability, a number of other jurisdictions have addressed such one-sided arbitration provisions.

For example, the Supreme Court of West Virginia held that:

[W]here an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.

Arnold v. United Cos. Lending Corp., 511 S.E.2d 854, 862 (W. Va. 1998).

The Court in Arnold stated that "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" Id. at 861 (quoting Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co., 413 S.E.2d 670 (W. Va. 1991)). Applying this test, the Court noted that "the relative positions of the parties, a national corporate lender on one side and elderly, unsophisticated consumers on the other, were 'grossly unequal.'" Id. (footnote omitted). Additionally, there was "no evidence that the loan broker made any other loan option available to the Arnolds." Finally, the Court found that "the terms of the agreement are 'unreasonably favorable' to United Lending." Based on these reasons, the Court found the arbitration agreement to be unconscionable.

Similarly, the Montana Supreme Court voided as unconscionable an arbitration provision contained in a contract for advertisement in a telephone directory that reserved the right to a judicial forum for the Publisher for collection of amounts due while limiting the consumer to arbitration of all claims. Iwen v. U.S. West Direct, 977 P.2d 989 (Mont. 1999). The Montana Court held:

> [T]his case presents a clear example of an arbitration provision that lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter. Because U.S. Direct presented this agreement on a take-it-or-leave-it basis, it is also a contract in which there was not meaningful choice on the part of the weaker bargaining party regarding acceptance of the provisions. . . . [D]isparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive.

Id. at 996; see also Williams v. Aetna Fin. Co., 700 N.E.2d 859 (Ohio 1998), *cert. denied*, 526 U.S. 1051 (1999) (refusing to enforce an arbitration clause in a consumer loan contract which preserved for the finance company the judicial remedy of foreclosure on the debtor's mortgage but restricted the debtor's remedies solely to arbitration); Lytle v. CitiFinancial Servs., Inc., 810 A.2d 643 (Pa. Super. Ct. 2002) (finding unenforceable an arbitration agreement that reserved access to the courts for CitiFinancial, absent "business realities" that would *compel* such a clause); Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361 (Ark. 2000) (finding that the arbitration agreement lacked mutuality because it provided for a judicial forum for one party while restricting the other party to arbitration).[4]

---

[4] A minority of courts reach the opposite conclusion, holding that agreements to arbitrate which reserve certain judicial remedies to one party are not unconscionable. See e.g., Stout v. J.D. Byrider, 228 F.3d 709 (6th Cir. 2000) (upholding an arbitration agreement which exempted from arbitration disputes regarding buyer's failure to pay because buyer failed to show the agreement to be one of adhesion or sufficiently one-sided as to be unconscionable); Conseco Fin. Serv. Corp. v. Wilder, 47 S.W.3d 335 (Ky. Ct. App. 2001) (holding that the arbitration agreement was not unconscionable even thought it allowed the lender to pursue judicial enforcement of the security agreement). We find the majority view to be more persuasive.

The arbitration agreement in this case is comparable to those that were found to be unconscionable in the aforementioned cases. City Auto has a judicial forum for practically all claims that it could have against Taylor. Indeed, it is hard to imagine what other claims it would have against her other than one to recover the vehicle or collect a debt. At the same time, Taylor is required to arbitrate any claim that she might have against City Auto.

The contract signed between Taylor and City Auto is one of adhesion, in that it is a standardized contract form that was offered on essentially a "take it or leave it" basis without affording Taylor a realistic opportunity to bargain. See Black's Law Dictionary 40 (6th ed. 1990). We have previously determined that enforceability of contracts of adhesion generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. See Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996). Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party. Id. Looking at the arbitration agreement in the present case, it is clear that it is unreasonably favorable to City Auto and oppressive to Taylor. For these reasons, we find the arbitration clause in the Buyers Order to be invalid and unenforceable.

Generally, a void agreement to arbitrate, incorporated in a general contract, is treated as a separate contract. 4 Am. Jur. Alternative Dispute Resolution § 77 (Supp. 2002) If the agreement is not a part of the substance of the general contract, pertains to the remedy only, and is collateral to the contractual matters, it is severable from the main body of the contract. Id. In Tennessee, "[a]n agreement can be either an entire contract or a severable contract according to the intention of the parties, and the fact that divisible parts are included within the same document does not preclude them from being considered and enforced as separate contracts." Penske Truck Leasing Co. v. Huddleston, 795 S.W.2d 669, 671 (Tenn. 1990).

Because the arbitration provision in the Buyers Order only relates to remedy and is collateral to all other contract matters, we find that it is severable from the remaining portions of the contract.

### CONCLUSION

In summary, we hold that a claim for fraudulent inducement was subject to arbitration in this case because the parties agreed in the Buyers Order to be governed by the FAA, and the FAA provides for arbitration of claims for fraud. However, we also find that the arbitration clause in the Buyers Order is unconscionable and therefore void because it reserves the right to a judicial forum for City Auto while requiring Taylor to submit all claims to arbitration. For these reasons, the decision of the Court of Appeals to overrule the trial court's dismissal of the complaint is affirmed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Costs of this appeal are assessed to City Auto Sales.

_____
WILLIAM M. BARKER, JUSTICE