IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2015 Session

## ROBERT RANDALL CAPPS, ET. AL. v. ADAMS WHOLESALE CO., INC., ET. AL.

**Appeal from the Chancery Court for Greene County**
**No. 20100106      Hon. Thomas J. Wright, Judge[1]**

**No. E2014-01882-COA-R3-CV-FILED-MAY 21, 2015**

This appeal concerns the applicability of an arbitration agreement. The plaintiffs purchased decking product manufactured by the defendant. The product was covered by a limited warranty, which included an arbitration agreement. The limited warranty was never provided to the plaintiffs. Instead, a notice was attached to the product, advising them to retrieve a copy of the limited warranty through the defendant's website. Following installation of the product, the plaintiffs experienced problems with the product. The defendant advised the plaintiffs that the issue was merely cosmetic. The plaintiffs filed suit. The defendant filed a motion to dismiss or to stay the proceedings and compel arbitration. The trial court denied the motion, finding that the parties had not entered into an agreement to arbitrate disputes. The defendant appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and BRANDON O. GIBSON, JJ., joined.

Darryl Lowe, Knoxville, Tennessee, for the appellant, TAMKO Building Products, Inc.

Thomas C. Jessee, Johnson City, Tennessee, for the appellees, Robert Randall Capps and Carolyn Brown Capps.

---

[1] Sitting by interchange.

**OPINION**

## I.    BACKGROUND

In August 2006, Robert Randall Capps and Carolyn Brown Capps (collectively "Plaintiffs") purchased decking material ("the product") from Greeneville Builders Supply. The product was manufactured by TAMKO Building Products ("Defendant"), distributed through Dealer's Warehouse Corporation, and installed by Todd Brown. Plaintiffs were advised that the product came with a lifetime warranty but were not given any documentation of the warranty prior to the purchase. Instead, each bundle of the product and each individual board contained the following notice:

> This product is covered by a TAMKO limited warranty. All other warranties are expressly excluded. You may obtain a copy of the limited warranty from your dealer, by calling 800-641-4691, or from our web site: tamko.com.

On the second page of the limited warranty, under the heading "**LEGAL REMEDIES**," the following notice was provided:

> **MANDATORY BINDING ARBITRATION: EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER INCLUDING WHETHER ANY PARTICULAR MATTER IS SUBJECT TO ARBITRATION (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO'S EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE PRODUCTS SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY. TO ARBITRATE AN ACTION AGAINST TAMKO, YOU MUST INITIATE THE ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF ARBITRATION OF THE AMERICAN ARBITRATION ASSOCIATION . . . AND PROVIDE WRITTEN NOTICE TO TAMKO . . . WITHIN THE TIME PERIOD PRESCRIBED BELOW.**

In April 2007, Plaintiffs advised Defendant that the product was defective and formally requested replacement of the product pursuant to the warranty. Defendant advised Plaintiffs, by letter dated April 11, 2007, that the product was free of warranted defects

and "appear[ed] to be performing properly." Defendant attached a copy of the limited warranty to the letter denying the claim.

Three years later, Plaintiffs filed suit against Greeneville Builders Supply, Todd Brown, Dealer's Warehouse Corporation, and Defendant. Relative to Defendant, Plaintiffs alleged that Defendant had breached its express warranty, the warranty of fitness for a particular purpose, and the warranty of merchantability. Plaintiffs asserted that Defendant was negligent in the manufacturing of the product and that Defendant

> misrepresented the quality of the materials it used to manufacture the product, misrepresented the maintenance, storage and durability of the product and misrepresented the defects in the product when they were put on notice of the same in an intentional act to avoid its warranty.

Plaintiffs sought compensatory damages in the amount of $75,000 and punitive damages in the amount of $75,000.

Defendant responded with a motion to dismiss or to stay the proceedings and compel arbitration. Defendant alleged that the "contractual warranty agreement that governed the sale of the products at issue . . . require[d] mandatory arbitration." Plaintiffs responded by asserting that they were not bound by the arbitration agreement when they were not given a copy of the limited warranty prior to the purchase of the product, when they had not signed the agreement, and when compelling arbitration would result in excessive costs and would disrupt the court's ability to resolve the matter efficiently given the multiple defendants involved in the suit that were not subject to the arbitration clause. Defendant responded, in pertinent part, by asserting that Plaintiffs were free to reject the product upon delivery, that their signature was not required, that the cost of arbitration was not prohibitive, and that similar arbitration agreements had been upheld even in cases involving multiple defendants.

Following a hearing, the trial court denied the motion.[2] The order provided, in pertinent part, as follows:

> [T]he Court is of the opinion that Plaintiffs are unsophisticated with regard to building products, that it would be unconscionable to require a purchaser of building products to have knowledge of the arbitration agreement, and that Plaintiffs should not have to give up their rights to a jury trial without an overt agreement[.]

---

[2] Neither party filed a transcript or statement of the evidence.

This timely appeal followed.

## II.    ISSUE

We consolidate and restate the issue raised on appeal as follows:

Whether the trial court erred in denying the motion to stay the proceedings and compel arbitration.

## III.    STANDARD OF REVIEW

When ruling on the appeal of a denial of a motion to compel arbitration, we must follow the standard of review that applies to bench trials. *Spann v. American Express Travel Related Servs. Co.*, 224 S.W.3d 698, 706-07 (Tenn. Ct. App. 2006). Under that standard, review of the trial court's findings of fact are "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Questions of law are reviewed de novo without a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

## IV.    DISCUSSION

Defendant argues that Plaintiffs entered into an arbitration agreement by purchasing the product. Defendant notes that such agreements need not be signed and may be offered on a take-it-or-leave it basis. Plaintiffs respond that they never entered into an agreement and alternatively assert that the agreement is an unconscionable contract of adhesion, that the arbitration proceedings are cost-prohibitive, and that submitting to arbitration would be inefficient.

The parties agree that the Federal Arbitration Act ("the FAA"), codified at 9 U.S.C. section 2, et seq.,[3] governs the arbitration agreement. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh*

---

[3] "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

*Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA applies to all state and federal cases in which the contract at issue requiring arbitration involves or affects interstate commerce. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 83-84 (Tenn. 1999) (discussing the interstate commerce requirement).

In a contest involving an arbitration agreement, a court has to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (citations omitted); *Taylor v. Butler*, 142 S.W.3d 277, 283-84 (Tenn. 2004) (citations omitted) ("Generally, whether a valid agreement to arbitrate exists between the parties is to be determined by the courts."). "In determining whether there is a valid agreement to arbitrate, 'courts generally . . . should apply ordinary state-law principles that govern formation of contracts.'" *Taylor*, 142 S.W.3d at 84. (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *7-8 (Tenn. Ct. App. Apr. 24, 2015) (requiring the trial court to consider whether a contract was formed before compelling arbitration).

A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991) (internal quotation and citation omitted). Tennessee courts have also defined a contract more simply as "'an agreement, upon sufficient consideration, to do or not to do a particular thing.'" *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999) (quoting *Smith v. Pickwick Elec. Coop.*, 367 S.W.2d 775, 780 (Tenn. 1963) (internal citation omitted)).

We agree that the absence of a signature on the agreement was not fatal to Defendant's motion to compel arbitration pursuant to the FAA. We also agree that failure to read an agreement does not absolve a contracting party from the terms contained in an agreement. *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993). However, the "contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (citations omitted). In this case, Plaintiffs were not provided with a copy of the limited warranty that contained the arbitration agreement prior to their purchase or when the product was delivered for installation. The notices provided on the product did not reference an arbitration agreement or provide any indication that acceptance of the product was

tantamount to acceptance of an arbitration agreement. Plaintiffs, like any ordinary consumer, did not consult their warranty to contact the manufacturer of the product until after they experienced an issue, approximately six months after the product was installed. Under these specific circumstances, we hold that an arbitration agreement was not formed because there was never an objective mutual assent to the terms of the agreement when Plaintiffs were not notified that such an agreement existed. Accordingly, we affirm the trial court's denial of the motion to stay the proceedings and compel arbitration.

Having concluded that an arbitration agreement was not formed, the alternative arguments raised by Plaintiffs and not specifically addressed by the trial court are pretermitted.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded to the trial court for further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, TAMKO Building Products, Inc.

_____
JOHN W. McCLARTY, JUDGE